**Nancy R. CARTER, Appellant,**

v.

**David A. NOVOTNY, Appellee.**

**Nos. S-2645, S-3049.**

Supreme Court of Alaska.

Sept. 8, 1989.

Rehearing Granted Oct. 9, 1989.

Charles Hagans, Hagans, Brown, Gibbs and Moran, Anchorage, for appellant.

William T. Ford, Anchorage, for appellee.

Ame Ivanov, Anchorage, Guardian Ad Litem.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

The principal issue presented in this appeal is whether the superior court erred in awarding shared custody of Heidi Novotny to David A. Novotny, her father, and Nancy R. Carter, her maternal aunt, after having determined that it would be detrimental

to Heidi to continue her physical placement with her father. Initially, the court awarded shared custody of Heidi to both Nancy and David, physical custody being placed with David. However, following a second hearing at which additional evidence was elicited, the court transferred physical custody from David to Nancy, leaving the previous award of shared custody undisturbed.

Nancy filed two appeals, later consolidated. Her appeals raised the propriety of shared custody. David challenges the superior court's jurisdiction to modify the first custody order, and also argues that there was insufficient evidence to justify a transfer of physical custody from a parent to a non-parent.[1]

## I. FACTS AND PROCEEDINGS

In 1981 David and Viretta Novotny were divorced in Oregon. The court granted custody of their four children to Viretta, with restricted visitation to David. Viretta moved to Anchorage in 1982, bringing the four children with her. She was killed in an auto accident in 1983, and David moved into her home to raise the children.

The relationship between David and the three eldest daughters became strained. Anya, the eldest, graduated from high school and went to college. When not in college, she makes her home with Nancy in Oregon. Heather, the second daughter, also left Anchorage to live with Nancy. In 1986 Linda, the third daughter, attempted to run away to Nancy's home. She took Heidi, the youngest daughter, with her. Before Linda reached Oregon, Heidi was returned to David in Anchorage.

Nancy filed in the superior court in Anchorage[2] a complaint requesting custody of both Linda and Heidi, with restricted visitation for David. By stipulation, Linda was placed in the custody of Nancy. David answered the remainder of the complaint, requesting that it be dismissed. Trial was held in December 1987. The court made oral findings of fact and conclusions of law, determining that it was necessary to award shared custody of Heidi to David and Nancy, with physical custody to remain with David. Being of the opinion that the question of the fitness and mental stability of David was still unresolved, the court ordered a psychological evaluation of David to be completed by February 1988.

The court then ordered the following: (1) Heidi was to remain with David until further court order; (2) Nancy was to receive shared custody of Heidi; and (3) Nancy was to have visitation on a regular basis with Heidi. The court specifically found that it would be detrimental to Heidi if the above were not ordered. Nancy's counsel was directed to submit proposed findings of fact and conclusions of law in accordance with the oral decision.

Counsel submitted proposed findings of fact and conclusions of law, to which David objected. The trial court modified and signed the findings of fact and conclusions of law on January 21, 1988. An appeal was filed by Nancy.[3] In the interim David underwent a psychological evaluation after which he and Heidi moved to Oregon.

After a written psychological evaluation, a supplemental report by Heidi's guardian *ad litem* and a report by a social service specialist were received by the superior court, a hearing was held and additional testimony taken. The court made supplemental findings of fact and conclusions of law, and ordered Heidi's physical custody transferred from David to Nancy. Nancy again appealed; the appeals were consolidated.[4]

---

1. David did not file a cross-appeal; therefore, the insufficiency of evidence claim is not properly brought before this court. *See* note 5, *infra*.

2. Her claim was brought pursuant to AS 25.30.-020 (the Uniform Child Custody Jurisdiction Act) and AS 25.20.060.

3. Arguably this order was not a final judgment, but since the trial court's September 1988 order moots the first appeal, there is no need to consider the issue.

4. As noted by David, neither party involved in this suit was living in Alaska at the time of modification, nor had they been in Alaska since December 1987. Even though eight months had passed from the time of their departure, the

## II. DISCUSSION

### THE SUPERIOR COURT DID NOT ABUSE ITS DISCRETION BY ORDERING SHARED CUSTODY, EVEN THOUGH IT FOUND THAT IT WOULD BE DETRIMENTAL TO HEIDI TO AWARD DAVID PHYSICAL CUSTODY.

■ As the trial court correctly concluded, this appeal is governed by the principles set forth in *Turner v. Pannick*, 540 P.2d 1051, 1055 (Alaska 1975) and *Britt v. Britt*, 567 P.2d 308 (Alaska 1977). *Turner* established the presumption that a parent is fit to have custody of his or her children. A parent is also entitled to a custodial preference over non-parents, unless there is clear evidence that the parent is either (1) unfit or (2) the welfare of the child requires that the child be placed in the custody of a non-parent. 540 P.2d at 1054 (quoting *Wilson v. Mitchell*, 406 P.2d 4, 7 (Alaska 1965)).

■ In *Turner*, this court held that a finding that parental custody is clearly detrimental to a child satisfies the "welfare of the child" requirement, and would permit a court to place the child in the custody of a non-parent. 540 P.2d at 1051. *See also Britt*, 567 P.2d at 310. *Britt* refined *Turner* by holding that in a custody dispute between a non-parent and a parent, "the parent is to be preferred unless parental custody would be 'clearly detrimental to the child.'" 567 P.2d at 310 (citing *Turner*, 540 P.2d at 1055). The burden of proving detriment is on the non-parent. *Id.*

The trial court initially concluded that it could not fully resolve the custody issue without additional evidence, primarily a psychological evaluation of David. It ordered shared custody, with physical custody of Heidi to remain with David.

After receiving additional evidence, the trial court made supplemental findings of fact and conclusions of law:

1. It is clear from the evidence that [David] has problems with poor parenting abilities; and has not made steps since the last proceeding to improve his abilities;

2. He has engaged in dangerous behavior with his children, including holding a firearm during an argument with another daughter; the evidence of his parenting with all the children and the result of his psychological exam show that [he] has behavior characteristics and parenting methods that are clearly detrimental to the continued primary physical custody of Heidi;

3. It would be clearly detrimental to Heidi not to modify the previous custody order to give physical custody to [Nancy]; [and]

4. The more convenient forum will hereafter be in Oregon where all parties now reside.

It ordered that physical custody of Heidi be transferred from David to Nancy, leaving both parties with shared custody. Nancy contends that a court may not award shared custody of a child to an unfit parent; David contends that the award in this case is proper.

As noted by David, the superior court's modification of custody on September 30, 1988, mooted any argument that the findings of fact do not support the conclusions of law signed by the trial court on January 21, 1987. Because the first order was modified after supplemental findings of fact and conclusions of law were made, the pre-

superior court retained jurisdiction until its final order was entered. *See Szmyd v. Szmyd,* 641 P.2d 14, 16–17 (Alaska 1982) (in an action for the placement of a child under Alaska's version of the UCCJA, the superior court may modify an order for the custody of a child at anytime so long as it has jurisdiction under AS 25.30.020 and is an appropriate forum under AS 25.30.050). *Cf. S.J. v. L.T.,* 727 P.2d 789 (Alaska 1986). *See also* B. Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Juris-*

*diction Under UCCJA,* 14 Fam. L.Q. 203, 213–27 (1981); Uniform Child Custody Jurisdiction Act (UCCJA) §§ 1, 3, 6 & 7, 9 U.L.A. 115, 123, 143–44, 219–20, 233–34 (1988). Oregon would not have been able to assert jurisdiction over this case because the child custody dispute was still "pending" before the Alaska courts. *See* AS 25.30.050(a); Or.Rev.Stat. § 109.760. *See also* AS 25.30.020; Or.Rev.Stat. § 109.730. *Cf. Carson v. Carson,* 29 Or.App. 861, 565 P.2d 763, 764–765 (1977).

vious order is also moot, leaving only the second order in question.

Nancy disputes whether a court may award shared custody of a child to a parent and a non-parent, even though physical custody is placed with the non-parent.

AS 25.24.150(a) provides in part:

In an action ... for placement of a child when one ... parent [has] died, the court may, if it has jurisdiction ... and is an appropriate forum, ... during the pendency of the action ... or at any time thereafter during the minority of a child ... *make, modify, or vacate an order for the custody of or a visitation with the minor child that may seem necessary or proper, including an order that provides for visitation by ... [an] other person if that is in the best interests of the child.*

(Emphasis added).

AS 25.20.060 provides in part:

(a) If there is a dispute over child custody, either parent may petition the superior court for resolution of the matter under AS 25.20.060—25.20.130. *The court shall award custody on the basis of the best interests of the child.* In determining the best interests of the child, the court shall consider all relevant factors including those factors enumerated in AS 25.24.150(c).

....

(c) The court may award shared custody to both parents if shared custody is determined by the court to be in the best interests of the child. An award of shared custody shall assure that the child has frequent and continuing contact with each parent to the maximum extent possible.

(Emphasis added).

Accordingly, AS 25.24.150 gives the trial court broad discretion to make a child custody order that it deems necessary and proper, so long as the order is in the best interests of the child, as defined by AS 25.20.060, AS 25.20.090 and AS 25.24.-150(c). The trial court's findings regarding termination of parental rights will not be disturbed unless they are clearly errone-

ous. Civil Rule 52(a); *E.A. v. State*, 623 P.2d 1210, 1212 (Alaska 1981).

Even though AS 25.20.060 does not specifically permit shared custody with a non-parent, this court has previously sustained such custody awards. *See Bass v. Bass*, 437 P.2d 324 (Alaska 1968) (grandparent awarded temporary physical custody of child even though parent retained legal custody also). We specifically note the legislative purpose for enacting AS 25.20.060:

Legislative Intent....

(a) ... [I]t is in the public interest to encourage parents to share the rights and responsibilities of child rearing ... [even when] actual physical custody may not be practical or appropriate.... [B]oth parents [should] have the opportunity to guide and nurture their child and to meet the needs of the child on equal footing beyond the considerations of support or actual custody.

Ch. 88, § 1, SLA 1982.

By ordering shared custody between a non-parent and a parent, the superior court attempted to effectuate the purposes of AS 25.20.060—25.20.130 and AS 25.24.150. The court would not abuse its discretion by awarding shared custody between a parent and non-parent, so long as the best interests of the child are served. *Cf. Bass*, 437 P.2d at 325.

Neither party contends that it would be detrimental to Heidi for her father to visit with her or participate in her upbringing, and Nancy expressly concedes that "it [is] generally desirable to assure a minor child frequent and continuing contact with both parents after the parents have separated or dissolved their marriage, and it is in the interest of the public to encourage parents to share the rights and responsibilities of child rearing."

Instead of conceding that the same principles apply to parent and non-parent custody disputes, Nancy argues the court lacks jurisdiction to award such shared custody. We do not agree. As previously noted, a trial court is given broad discretion in custody awards so long as the best interests of the child are served. *Horutz v. Horutz*, 560 P.2d 397,

399 (Alaska 1977); *Carle v. Carle*, 503 P.2d 1050, 1052 (Alaska 1972). The policy supporting shared parental custody applies equally when the custody dispute arises between a parent and a non-parent. Nancy does not dispute the facts as found by the trial court. Based on the undisputed findings, the court did not abuse its discretion in ordering shared custody between Nancy and David.[5] *Bass*, 437 P.2d at 316.

### III. CONCLUSION

The order of September 1988 is AFFIRMED.

---

5. David contends that "there was no evidence before the court that the parental relationship was detrimental to the child, ... [and] there was insufficient evidence presented at either hearing to warrant any change of custody from [Novotny to Carter]." Neither party included the transcripts of the two proceedings below. However, the factual determinations made by the trial court have not been contradicted by either party and provide a sufficient basis for the transfer of physical custody to Nancy.

David also contends that "nothing in the record" enables this court to review the third and fourth points made by Nancy, *i.e.,* the court abused its discretion in failing to award custody to Nancy and the court abused its discretion in failing to restrict David's visitation rights.

Nancy does not challenge the factual findings of the superior court. Her sole contention is that the conclusion of law cannot be justified by the facts as found by the court. There is no need to review transcripts of these proceedings to determine the custody issue. Furthermore, Nancy never raised the issue whether the court should have restricted David's visitation rights.

Additionally, David suggests that "there was insufficient evidence presented at either hearing to warrant any change of custody from a parent to a non-parent and it is likely that if [David] had counter-appealed ... [the] September 1988, decision he would have prevailed." He contends that Nancy did not establish by a preponderance of the evidence in either proceeding that parental custody would be clearly detrimental to the child. This is because "there was no evidence before the court that the parental relationship was detrimental to the child." There being no cross-appeal, David's contentions are irrelevant.